IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|  |  |
|---|---|
| HANNAH P.,<br><br>    Plaintiff,<br><br>v.<br><br>DANIEL COATS, Director of<br>the Office of The Director<br>Of National Intelligence,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 1-16-cv-1030<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

THIS MATTER comes before the Court on a Motion for Summary
Judgment by Defendant Daniel Coats, Director of the Office of
The Director of National Intelligence ("Defendant" or "ODNI")
and on a Cross-Motion for Partial Summary Judgment filed by the
Plaintiff, Hannah P.[1]  Plaintiff Hannah P. ("Plaintiff") worked
at ODNI for a five-year term, during which time she was
diagnosed with Major Depressive Disorder.  Plaintiff alleges
that ODNI violated the Rehabilitation Act of 1973, 29 U.S.C. §
791, *et seq.*, in refusing to hire her for a permanent position;
failing to accommodate her; creating a hostile work environment;

---

[1] Pursuant to a protective order entered in this case, Plaintiff is identified
by her first name and the first initial of her last name.

wrongfully requiring a medical examination; and unlawfully disclosing confidential medical information (Count I). Plaintiff also alleges that ODNI interfered with and retaliated against her for using leave under the Family and Medical Leave Act("FMLA"), 39 U.S.C. § 2601, *et seq.* (Count II). Upon consideration of the memoranda filed in support of and in opposition to Defendant's motion and the Plaintiff's cross-motion, the Court concludes that Defendant is entitled to summary judgment on Counts I and II.

Plaintiff was hired by ODNI in March 2011 for a five-year term working in the Systems and Research Analysis unit. In the summer of 2011, Plaintiff was diagnosed with recurrent Major Depressive Disorder ("depression"). Around the time she was diagnosed with depression, Plaintiff informed her then supervisor of her diagnosis. She did not, however, request an accommodation at that time.

In early 2015, after Plaintiff had finished working on an 18-month long investigation that had required extensive overtime, Plaintiff began arriving to work late and missed several days of work. In March 2015, Plaintiff's supervisors approached her with concerns about her schedule and her work absences. Plaintiff told her supervisors that she was experiencing acute bouts of depression, and that she was having trouble getting to work. On March 19, 2015, Plaintiff met with

2

one of her supervisors, and the two agreed upon a plan to make
Plaintiff's schedule more regular.  The plan stated that
Plaintiff was expected to arrive at work by 10 a.m., and if
Plaintiff was not going to be in by that time, she was to call
or email her supervisors.  If Plaintiff had not arrived at work
or communicate with her supervisors by 11 a.m., a supervisor
would call her to determine when she would arrive.

Over the next week, Plaintiff did not consistently follow
through with the plan.  For example, on March 20, 2015,
Plaintiff did not email her supervisors until 11:05 a.m. to
advise that she would be in after 12 p.m. because she was
running errands for a house that she had recently purchased.  On
March 31, Plaintiff emailed her supervisors at 11:56 a.m. to
inform them that she would not be coming to work that day.  On
April 1, by 12:30 p.m., Plaintiff had not arrived or
communicated when she would arrive, so her second-level
supervisor called Plaintiff.  When Plaintiff arrived at work
later that day, the second-level supervisor told Plaintiff that
the plan they had created was not working.

Days later, Plaintiff met with her psychiatrist, who
recommended that Plaintiff take four weeks of leave to address
her depression.  Around the same time, on April 2, 2015,
Plaintiff's supervisors met and decided to refer Plaintiff to
the Employee Assistance Program ("EAP").  The EAP is a voluntary

3

counseling service that assists employees in accessing resources
and services that can help them address problems that are
affecting their work.  On April 9, Plaintiff's supervisors met
with Plaintiff and presented her with a management referral
memorandum they had drafted to the EAP setting forth Plaintiff's
attendance and reporting problems.  In the memorandum,
Plaintiff's supervisors explained that Plaintiff had disclosed
to them that she was seeing a psychiatrist and taking
medications for depression.  They also informed Plaintiff that
they had scheduled an appointment for her to meet with an EAP
counselor the following day.  Plaintiff told her supervisors
that her psychiatrist had recommended that she take leave.  Her
supervisors responded that they wanted her to keep her
appointment with the EAP counselor and would discuss her leave
request the following week.

Plaintiff met with the EAP counselor on April 10, 2015.  On
April 13, 2015, Plaintiff told her supervisor that she was
putting her plan to take lave on hold.  Plaintiff continued to
meet with the EAP counselor through July 17, 2015.  Plaintiff
claims that during her EAP sessions, she was questioned
regarding her mental health history and diagnoses, her past and
current medications and dosages, and her family medical history.
Plaintiff also alleges that the EAP counselor discussed

4

Plaintiff's mental health history with Plaintiff's second-level
supervisor.

Plaintiff's attendance and reporting issues continued
through the month of April 2015.  In late April 2015, Plaintiff
renewed her leave request.  Plaintiff's leave request was
approved and began on May 5, 2015.  Plaintiff used annual leave,
except for once a week, when she used sick leave for her
regularly scheduled counseling appointments.  Prior to her
departure, on May 4, Plaintiff's supervisors presented Plaintiff
with a Letter of Expectations that documented her past
attendance issues and set forth ODNI's expectations of Plaintiff
when she returned from leave, which included arriving at work by
10 a.m. and notifying a supervisor by 9:30 a.m. if she was going
to be late to work.

Shortly before going on leave, Plaintiff had submitted an
application for the Program Mission Manager Cyber Position ("the
Cyber position").  Plaintiff returned to work on June 1, and on
June 9, she interviewed for the Cyber position.  Plaintiff
learned after her interview that the interview panel had
recommended her for the position.  On June 17, the interview
panel's recommendation was forwarded to ODNI's Chief Management
Officer Mark Ewing.  Mr. Ewing recommended that Plaintiff not be
hired.  Plaintiff was informed that she was not selected for the

5

Cyber position on July 7, 2015.  Plaintiff completed her five-year term at ODNI in March 2016.

After having exhausted administrative remedies, Plaintiff filed this action on August 12, 2016.  In Count I of the operative complaint,[2] Plaintiff alleges that ODNI violated the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq.*, in refusing to hire her for a permanent position; failing to accommodate her; creating a hostile work environment; wrongfully requiring a medical examination; and unlawfully disclosing confidential medical information.  In Count II, Plaintiff alleges that ODNI interfered with and retaliated against Plaintiff for her use of leave under the Family and Medical Leave Act ("FMLA"), 39 U.S.C. § 2601, *et seq.*  Following the close of discovery, Defendant moved for summary judgment on all counts, and Plaintiff responded by filing an opposition and cross motion for partial summary judgment.

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if the pleadings and evidence before the Court show no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322

---

[2] The operative complaint is the Second Amended Complaint.  Upon being granted leave from the Court, Plaintiff amended her original complaint on April 18, 2017.  Defendant filed the instant Motion for Summary Judgment on May 12, 2017.  On June 10, 2017, with authorization from the Court, Plaintiff amended her complaint for a second time to clarify that her Rehabilitation Act claims were brought under both Sections 501 and 504 of the Rehabilitation Act.

(1986).  In reviewing a motion for summary judgment, the Court views the facts in the light most favorable to the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made, the opposing party has the burden of showing that a genuine dispute of material fact exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

The Rehabilitation Act prohibits federal agencies from discriminating against qualified employees based on a disability, and it provides the exclusive avenue for remedying such discrimination.  See 29 U.S.C. § 791, 794(a).  A plaintiff alleging violations of the Rehabilitation Act may prove her case by using either direct or circumstantial evidence of discrimination, or the burden-shifting approach under the *McDonnell Douglas* "pretext" framework.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Luther v. Gutierrez, 618 F. Supp. 2d 483, 491-93 (E.D. Va. 2009) (applying *McDonnell Douglas* to a Rehabilitation Act claim).

Under *McDonnell Douglas*, a plaintiff must first state a prima facie case of discrimination.  See McDonnell Douglas, 411 U.S. at 802.  To state a claim of disability discrimination, a plaintiff must show that: (1) she is an individual with a disability within the statute's definition; (2) she is qualified for the position; and (3) she suffered an adverse employment

7

action that was motivated by her disability status.  Doe v.
Univ. of Md. Med. Sys. Corp., 50 F.3d 1261, 1265 (4th Cir.
1995).  If the plaintiff succeeds in stating a prima facie case,
the burden of production shifts to the defendant to articulate a
legitimate, non-discriminatory reason for its adverse employment
decision.  Id.  If the defendant satisfies this showing, the
plaintiff must show that the articulated reason is a pretext for
discrimination.  Id. at 430-31.

In Count I of the complaint, Plaintiff claims that
Defendant violated the Rehabilitation Act's prohibition against
disability discrimination when Defendant did not hire Plaintiff
for the Cyber position, when it failed to accommodate
Plaintiff's disability, when it created a hostile work
environment, when it utilized the Employee Assistance Program as
a "medical examination," and when it wrongfully used
confidential medical information.

With respect to Defendant's decision not to hire Plaintiff
for the Cyber position, even if Plaintiff could establish a
prima facie case of discrimination, she cannot rebut the
legitimate, non-discriminatory reason that ODNI declined to hire
Plaintiff for the position—that Plaintiff had significant
attendance and reporting problems.  "It is hardly controversial
that attendance is an essential function of most employment
positions."  Vanyan v. Hagel, 9 F. Supp. 3d 629, 638 (E.D. Va.

2014) (citing <u>Tyndall v. Nat'l Educ. Ctrs.</u>, 31 F.3d 209, 213 (4th Cir. 1994)).  The record reflects that Plaintiff applied for and interviewed for the Cyber position soon after an extended period of time in which she had significant attendance and reporting problems.  The evidence also shows that ODNI's Chief Management Officer, Mr. Ewing, was aware of these issues when he decided not to select Plaintiff for the Cyber position. Mr. Ewing testified that he declined to hire Plaintiff at that time, but stated that he would have considered Plaintiff's subsequent applications for permanent employment had Plaintiff demonstrated improved performance for a longer period of time. Plaintiff cannot establish that this explanation was a pretext for discrimination.

To the extent Plaintiff's attendance problems were caused by her disability, an employer need not ignore an employee's problematic conduct, even if that behavior is potentially tied to a medical condition.  <u>See</u> <u>Vannoy v. Fed. Reserve Bank of Richmond</u>, 827 F.3d 296, 305 (4th Cir. 2016); <u>see also</u> <u>Maritson v. Kinney Shoe Corp.</u>, 104 F.2d 683, 686 n. 3 (4th Cir. 1997) ("Misconduct—even misconduct related to a disability—is not itself a disability, and an employer is free to fire an employee on that basis.").

Thus, even if Plaintiff's attendance problems were related to her depression, ODNI was free to not hire Plaintiff on the

basis of her attendance problems.  The Court need not second
guess ODNI's decision not to hire Plaintiff given that Defendant
has presented a legitimate, non-discriminatory reason for its
decision.  See DeJarnette v. Corning Inc., 133 F.3d 293, 298-99
(4th Cir. 1998) (stating that courts do not sit "as a kind of
super-personnel department weighing the prudence of employment
decisions made by [employers] charged with employment
discrimination").  As a result, Defendant is entitled to summary
judgment on Plaintiff's discrimination in hiring claim.

Regarding Plaintiff's claim that ODNI failed to accommodate
her disability, Plaintiff cannot make out a prima facie case.
To establish a failure to accommodate claim under the
Rehabilitation Act, Plaintiff must show that: (1) she was a
qualified person with a disability; (2) the employer had notice
of the disability; (3) the Plaintiff could perform the essential
functions of the position with a reasonable accommodation; and
(4) the employer refused to make such an accommodation.
Reyazuddin v. Montgomery Cty., Md., 789 F.3d 407, 414 (4th Cir.
2015) (citing Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345
(4th Cir. 2013)).

Plaintiff cannot establish the elements of a prima facie
case because the record reflects that ODNI provided her with at
least two reasonable accommodations.  First, Plaintiff did not
request an accommodation until her supervisors approached her to

10

address her attendance problems.  When Plaintiff disclosed to her supervisors that she had depression, her supervisors proposed a plan that required that Plaintiff arrive at work by 10 a.m.  If she had not arrived to work by that time, Plaintiff's supervisor would call her at 11 a.m. to determine her arrival time.  Although Plaintiff claims that this accommodation appeared to be working and that it was Defendant who abandoned the plan, the record shows that Plaintiff failed to adequately communicate with her supervisors during the first few weeks of the plan's execution.  Furthermore, Plaintiff was ultimately provided an accommodation that Plaintiff admits was effective—four weeks of leave in May 2015.  Plaintiff cannot prove that ODNI refused to provide her an accommodation.  As a result, Defendant is entitled to summary judgment on Plaintiff's failure to accommodate claim.

With respect to Plaintiff's hostile work environment claim, Plaintiff must establish that she: (1) is a qualified individual with a disability; (2) was subject to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) there is some factual basis for imputing liability to the employer.  Edmonson v. Potter, 118 F. App'x 726, 730 (4th Cir. 2004) (citing Fox v. GMC, 247 F.3d 169, 177 (4th Cir. 2001)).  Plaintiff must demonstrate that her

employer's conduct was objectively hostile, such that a reasonable person would so perceive it as such.  Id.

The Court finds no evidence here that could support a finding that Plaintiff was harassed, that any alleged harassment that Plaintiff suffered was based on her disability, or that any harassment was severe or pervasive such that it created an abusive work environment.  The record does not reflect that Plaintiff was subject to any threatening or intimidating treatment, offensive language, or insult based on her disability.  On the contrary, the evidence shows that Plaintiff's supervisors were willing to help Plaintiff when she experienced acute bouts of depression and that they were open to finding an accommodation that would help Plaintiff.  As a result, Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim.

Plaintiff also alleges that Defendant violated the Rehabilitation Act by using the EAP referral process as a medical examination.  An employer shall not require a medical examination "unless such examination or inquiry is shown to be job-related and consistent with business necessity."  42 U.S.C. § 12112(d)(4)(A).  However, Plaintiff's EAP counseling sessions were not medical examinations.  The EAP counselor with whom Plaintiff met testified that she was not a medical doctor or a nurse, and that Plaintiff was not subjected to a mental health

evaluation or a diagnostic assessment.  The counselor also testified that she did not ask Plaintiff about family medical history or genetic information.  Thus, Plaintiff cannot prove a wrongful medical examination claim, and Defendant is entitled to summary judgment on this claim.

Finally, Plaintiff alleges that ODNI unlawfully disclosed her confidential medical information when Plaintiff's supervisors informed the EAP counselor that Plaintiff had been meeting with a psychiatrist and was taking medication for depression.  An employer is prohibited from making medical inquiries from an employee and disclosing an employee's medical information, but if the employee voluntarily discloses her medical condition to her employer, the employer is not obligated to keep that information confidential.  See Reynolds v. Am. Nat'l Red Cross, 701 F.3d 143, 155 (4th Cir. 2012).

In this case, the record reflects that Plaintiff voluntary disclosed to her supervisors that she had been diagnosed with depression and was taking medication.  Plaintiff did not disclose this information in response to a medical inquiry from her employer; rather, she did so voluntarily.  As a result, this information was not subject to protection.  Furthermore, Plaintiff has not shown that ODNI disclosed any medical information outside of the group of people who were working with Plaintiff to find a reasonable accommodation.  Thus, Defendant

is entitled to summary judgment on Plaintiff's confidentiality claim.

In Count II of the complaint, Plaintiff claims that ODNI violated her rights under the FMLA. The FMLA provides eligible employees the right to take up to 12 weeks of leave during any 12-month period for a qualifying medical reason. 29 U.S.C. § 2612(a). Plaintiff claims that Defendant interfered with her rights under the FMLA and then did not hire her for the Cyber position in retaliation for Plaintiff taking FMLA-qualifying leave. Even assuming that Plaintiff was entitled to FMLA leave in the first place, the evidence does not show that ODNI interfered with Plaintiff's FMLA rights or retaliated against her.

First, Plaintiff did not request FMLA leave or put her supervisors on notice that her leave would be for an FMLA-qualifying reason. When an employee requests FMLA leave, or when the employer knows that an employee's leave may be for a FMLA-qualifying reason, the employer must notify the employee that she is eligible to take FMLA leave within five business days. 29 C.F.R. § 825.300(b)(1). However, Plaintiff has not presented evidence that she ever requested FMLA leave or provided any medical documentation to support a request for FMLA leave. Instead, she asked for, and received, approximately four

14

weeks of annual leave, using sick leave for one day of each
week.

Furthermore, Plaintiff's supervisors could not have been on
notice that Plaintiff was requesting leave for an FMLA-
qualifying reason.  The FMLA entitles an employee to leave for a
"serious health condition that makes the employee unable to
perform [her job functions.]"  29 U.S.C. § 2612(a)(1)(D).  The
record reflects that Plaintiff's psychiatrist recommended that
she take time off to cope with burnout, and that Plaintiff told
her supervisor she could come to work if something important
came up.  This information was not sufficient for her
supervisors to know that Plaintiff's leave was for an FMLA-
qualifying reason.  Thus, Plaintiff's supervisors were not
required to notify Plaintiff of her right to take FMLA leave.
Moreover, Plaintiff was not prejudiced by the lack of notice.
Instead, she was granted her request—four weeks of leave.  As a
result, Plaintiff cannot prove that ODNI interfered with her
right to take FMLA leave.

Plaintiff also claims that ODNI did not select her for the
Cyber position in retaliation for her taking FMLA leave.  To
establish a prima facie case of retaliation, Plaintiff must
prove that: (1) she engaged in a protected activity; (2) her
employer took an adverse employment action against her; and (3)
there was a causal link between the two events.  Adams v. Anne

15

Arundel Cty. Pub. Sch., 789 F.3d 422, 429 (4th Cir. 2015).   If
Plaintiff makes this prima facie showing, the burden shifts to
ODNI to articulate a legitimate, non-retaliatory explanation for
its decision to not hire Plaintiff for the Cyber position.   See
id.   If ODNI meets its burden, the burden shifts back to
Plaintiff to establish that ODNI's explanation is a pretext for
retaliation.   See id.

   As with Plaintiff's discrimination in hiring claim, even if
Plaintiff could make a prima facie case, she cannot establish
that ODNI's explanation for not hiring her was pretextual.   As
explained above, Plaintiff applied for the Cyber position
shortly after a period of time in which she demonstrated
attendance and reporting problems.   Mr. Ewing, who ultimately
decided not to hire Plaintiff, was aware of these issues with
Plaintiff's performance.   Plaintiff has not established that Mr.
Ewing's decision not to select her was motivated by any
retaliatory animus.   Because Plaintiff cannot establish that Mr.
Ewing's explanation was a pretext for retaliation, Plaintiff's
FMLA retaliation claim fails as well.

   For the aforementioned reasons, this Court finds that
summary judgment should be granted in favor of the Defendant on
Counts I and II.   An appropriate order shall issue.

_Claude M. Hilton_

CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
July 27, 2017