IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| HANNAH P., | ) |
| Plaintiff, | ) |
| v. | ) 1:16-cv-1030 (LMB/IDD) |
| AVRIL HAINES, in her official capacity as Director of National Intelligence, | ) |
| Defendant. | ) |

MEMORANDUM OPINION

Before the Court is plaintiff Hannah P.'s ("Hannah" or "plaintiff") Motion for Reconsideration [Dkt. No. 174], in which she asks the Court to reconsider its decision denying her any damages resulting from defendant not hiring her for a permanent position (the "Cyber Position") which she alleges was a result of defendant interfering with her rights under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601. In her Motion, plaintiff argues that the Court unfairly deprived her of the opportunity to present all her arguments about her damage claim, applied the correct law erroneously to the facts, and improperly imposed the burden of proof on plaintiff. Defendant has filed an opposition to which plaintiff has replied. Finding that oral argument will not further the decisional process, plaintiff's Motion for Reconsideration will be resolved on the pleadings submitted and the record, and for the reasons explained below, it will be denied.

I.

This civil action concerns an allegation that defendant, the Office of the Director of National Intelligence ("ODNI"), interfered with plaintiff's rights under the FMLA by preventing her from timely taking a mental health leave recommended by her medical providers.[1] At the close of a two-day bench trial, the Court orally ruled that defendant had interfered with plaintiff's FMLA rights and directed the parties to submit post-trial briefs fully developing their positions on damages. Through pretrial motions and the parties' Proposed Findings of Fact and Conclusions of Law briefs, the Court was on notice that plaintiff's primary damage claim focused on defendant's decision not to hire her for the Cyber Position. There was also a major issue concerning whether plaintiff had adequately mitigated her losses after her non-selection for that position, which the Court highlighted in its instructions to counsel. In her post-trial submission plaintiff focused on her mitigation efforts, apparently assuming that the Court had determined that she was entitled to damages for not being hired for the Cyber Position, whereas the defendant spent six pages arguing that no damages related to the position should be awarded because plaintiff's non-selection was not caused by the alleged interference, and that even if the Court found such causation, any damages should be reduced significantly because plaintiff had not adequately mitigated her losses by seeking comparable employment.

On December 30, 2021, after considering the post-trial briefs, the Court issued a Memorandum Opinion setting out its findings of fact and conclusion of law. [Dkt. No. 169]. The opinion concluded that defendant had violated plaintiff's rights under the FMLA by interfering with her request to take medical leave, and awarded her $15,083.20 in compensatory and

---

[1] The December 30, 2021 Memorandum Opinion at [Dkt. No. 169] recites in detail the factual findings and legal conclusions which are incorporated in this Memorandum Opinion.

liquidated damages based on the annual leave she was forced to use as a result of defendant's FMLA violation. [Dkt. No. 169] at 2. Because the amount of prejudgment interest due on those damages[2] and the issue of plaintiff's attorney's fees remained unresolved, a final judgment was not entered and the parties were ordered to calculate the prejudgment interest and try to resolve the amount of attorney's fees and expenses to be awarded to plaintiff's counsel. [Dkt. No. 170]. Plaintiff filed a consent motion to stay the deadlines in that Order so that she could file the pending Motion for Reconsideration. [Dkt. No. 171].

Since the Order for which plaintiff seeks reconsideration did not result in entry of a final judgment, plaintiff's motion is brought under Fed. R. Civ. P. 54(b), which empowers the Court to "reconsider and modify its interlocutory judgments at any time prior to final judgment[.]" Because Rule 54(b) motions for reconsideration face a lower bar than those under Rules 59 and 60, reconsideration should not be limited to "extraordinary circumstances.... Rather, the goal is simply to reach the correct judgment under law." Matter of Vulcan Constr. Materials, LLC, 433 F. Supp. 3d 816, 820 (E.D. Va. 2019) (internal quotations omitted). Nonetheless, the power of Rule 54(b) reconsideration "is not limitless," and is "only appropriate when 1) different evidence is produced at a subsequent trial; 2) the applicable law changes; or 3) there is clear error causing manifest injustice." Integrated Fed. Sols., LLC v. Rubio, No. 1:20-cv-912-LMB-IDD, 2020 WL 12432030, at *1 (E.D. Va. Dec. 2, 2020) (internal citations omitted). Plaintiff does not contend

---

[2] The amount of prejudgment interest is significant due to the length of time it has taken to reach a judgment. Plaintiff filed her first complaint on August 12, 2016, alleging in three counts violations of the Rehabilitation Act, the FMLA, and federal severance pay laws. On July 27, 2017, summary judgment was granted in defendant's favor on all counts of the operative Second Amended Complaint [Dkt. No. 74]. On appeal the Fourth Circuit reversed that decision as to one count—the FMLA interference claim—which was remanded for trial [Dkt. No. 84]. A bench trial took place on March 1 and 2, 2021, from which the Court found defendant liable on the remaining count. Motions practice and docket disruptions related to the COVID-19 pandemic delayed resolution of the damages issue until December 30, 2021.

that either of the first two standards applies. Accordingly, the question is whether the Court made a clear error, and if so, whether that error led to manifest injustice.

II.

Plaintiff first argues that she was unaware that the parties should brief causation in their post-trial bench memoranda and that she believed the damages for not being hired for the Cyber Position were impliedly granted in the Court's decision on liability. Plaintiff points to two parts of the record for this assumption. First, she points to a ruling on defendant's pre-trial motion in limine [Dkt. No. 101], in which defendant sought to exclude evidence of damages related to the Cyber Position as precluded by the Fourth Circuit's ruling on the other claims in this civil action and by the limitation on consequential damages for FMLA interference claims. See [Dkt. Nos. 102, 106, 107]. In denying the motion in limine, the Court[3] said "this matter should be ruled upon at the time of trial." [Dkt. No. 108]. That decision merely allowed plaintiff to present evidence supporting her claims about the Cyber Position damages at trial. Obviously that ruling did not imply that the Court had resolved whether plaintiff was entitled to any damages related to her non-selection for the Cyber Position. Plaintiff clearly understood that the issues remained unresolved because she devoted seven paragraphs of her pre-trial brief to arguing that plaintiff's non-selection was caused "by reason of" defendant's interference. [Dkt. No. 155] at ¶¶ 24-32. She even wrote in her own motion in limine that the Cyber Position's causation was "hotly disputed." [Dkt. No. 156] at 5.

Plaintiff also points to the Court's statements from the bench at the conclusion of the trial, in which counsel were directed to provide further briefing on "the damages and what the

---

[3] That motion was first ruled upon by Judge Claude M. Hilton [Dkt. No. 108], who denied it without prejudice, after which the undersigned judge was assigned to the civil action. The undersigned judge also ruled on the same motion, denying it with prejudice. [Dkt. No. 119].

4

proper rational approach is to the damages." Tr. Vol. II at 212:2-3. In that direction the Court stated that "the big ticket item here" is whether plaintiff mitigated her losses. Id. at 212:15-18. On the basis of that statement plaintiff argues that she was misled into focusing her post-trial brief on mitigation arguments and that she has not been fully heard on the issue of causation. But, as defendant responds, the Court made clear before and during trial that plaintiff had the burden of proving causation of her damages, and in particular had to prove that her non-selection for the Cyber Position was caused by defendant's FMLA interference. For example, before trial began, the plaintiff argued in a motion in limine that defendant's causation arguments about the Cyber Position should be excluded as an improperly pleaded affirmative defense. The Court denied plaintiff's motion, saying, "[T]he issue in this case is really essentially whether or not there has been a violation of the FMLA; if, two, that violation caused injury to your client; three, if injury was caused, what damages is she entitled to. She's got the burden on those issues." Tr. Vol I. at 8:8-12. The Court further explained:

> …[W]hether or not her—the non-selection of the Cyber Position, I mean, that is the heart and soul of the damage claim or certainly part of the damage claim in this case, and the government certainly—or the defendant certainly has a right to put on the record the evidence that it has to show that there were other reasons why she didn't get that position. So again, I'm denying the motion.

Tr. Vol. I at 9:10-17. Plaintiff was certainly on notice that she had to prove that defendant's FMLA interference caused her damages, as well as the amount of those damages. She presented evidence and argument on these issues. Moreover, to the extent plaintiff complains that the Court did not allow counsel to present closing arguments thereby depriving her an opportunity to present her damages theory, the entire record and plaintiff's Motion for Reconsideration have given her more than sufficient opportunity to present her argument.

5

As the defendant argues, this request for reconsideration "raises no new arguments, but merely requests the district court to reconsider a legal issue or to change its mind." Integrated Direct Mktg., LLC v. May, No. 1:14-cv-1183-LMB-IDD, 2016 WL 7334278, at *1 (E.D. Va. Aug. 12, 2016) (citing Pritchard v. Wal Mart Stores, Inc., 3 F. App'x 52, 53 (4th Cir. 2001)). Although the Court agrees with defendant that plaintiff has already had the opportunity to litigate this issue fully and fairly, her substantive arguments will be addressed.

III.

In its December 30, 2021 Memorandum Opinion, the Court found that although defendant interfered with plaintiff's FMLA rights by delaying her from taking requested medical leave when she first sought it and requiring her to use annual leave instead of sick leave, the only damage directly caused by that interference was the lost value of annual leave. The Court further held that defendant's FMLA interference was not the cause of plaintiff's non-selection for the Cyber Position; rather it was the negative impression of plaintiff held by the hiring official, Mark Ewing, which was significantly independent of the interference.

Plaintiff asserts that the Court made two main errors in its ruling. First, plaintiff contends that the Court erred in finding that any damages associated with her non-selection for the Cyber Position, such as lost wages and benefits, were consequential damages, which plaintiff has conceded would not be recoverable under the FMLA. Second, plaintiff contends that the Court erred by finding that Mr. Ewing's negative view of plaintiff was an intervening or superseding cause of plaintiff's non-selection for the Cyber Position because that issue was not pleaded by defendant as an affirmative defense for which defendant had the burden of proof. Neither argument has merit.

The FMLA provides that an employee whose rights are violated by her employer is entitled to damages equal to

> (I) any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or
>
> (II) in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks (or 26 weeks, in a case involving leave under section 2612(a)(3) of this title) of wages or salary for the employee;

29 U.S.C. § 2617 (a)(I)(A)(i). Employees also may obtain equitable relief, liquidated damages, and interest. Id. at § 2617 (a)(I)(B). The Fourth Circuit has unequivocally held that consequential damages are not recoverable under the statute. Montgomery v. Maryland, 72 F. App'x 17, 19 (4th Cir. 2003) ("[N]ominal and consequential damages…[are] not covered under the Act."). Nonetheless, plaintiff argues that her Cyber Position damages are not consequential damages, because they are "wages, salary, employment benefits, or other compensation," as defined by the statute. Case law on FMLA damages differentiates between "actual monetary losses," which are recoverable, and less concrete harms like emotional distress, which are not. Walker v. United Parcel Serv., Inc., 240 F.3d 1268, 1277 (10th Cir. 2001). See also Nero v. Indus. Molding Corp., 167 F.3d 921, 930 (5th Cir. 1999) ("[D]amages under § 2617(a)(1)(A)(i)(I) are limited to an amount equal to the lost salary or wages, lost employment benefits, or any 'other compensation' that is indicative of a quid pro quo relationship between an employer and an employee."). These authorities do not help plaintiff because they relate only to the types of damages available. In this case the defendant does not dispute that lost wages are recoverable under the FMLA. What is disputed is whether plaintiff's non-selection for the Cyber position was caused by the FMLA interference.

7

Plaintiff also cites Trimed, Inc. v. Sherwood Med. Co., 977 F.2d 885, 893 n.7 (4th Cir. 1992), from which she defines consequential damages as "a second derivative of that harm—a consequence of the consequence." [Dkt. No. 174-1] at 6. This case does not help plaintiff because under her theory, the consequence of defendant's FMLA interference was plaintiff's poor April attendance record, which she alleges caused Ewing not to select her for the Cyber Position. Plaintiff's facts, as she restates them, perfectly match her own definition of a consequential damage.

Plaintiff tries to characterize her lost job opportunity as a loss of her "ongoing employment" with defendant, but after the FMLA interference, her five-year term contract was neither shortened nor changed, she continued to receive the same pay, and she worked to the contract's end in March 2016. In other words, plaintiff's "ongoing employment" was not affected by her non-selection for the Cyber Position; rather, the Cyber Position was a job opportunity that never came to fruition.[4] Therefore, any wages associated with that position are speculative "future lost wages" which are not recoverable, even if indirectly caused by FMLA interference. Harbuck v. Briggs Equip., No. H-05-0342, 2006 WL 2168096, at *7 (S.D. Tex. July 31, 2006). For example, in Dawson v. Leewood Nursing Home, Inc., 14 F. Supp. 2d 828 (E.D. Va. 1998), the defendant's FMLA interference caused the plaintiff to develop health problems that made plaintiff unable to work in the future. Nonetheless, the court ruled that the plaintiff's lost future earning capacity was not recoverable because it was a consequential damage. Id. at 833-34. Here, plaintiff likewise argues that the FMLA interference worsened her April

---

[4] As defendant emphasizes, plaintiff had no right or guarantee of "ongoing employment" with the defendant beyond her contract term. In fact, plaintiff testified that before any FMLA interference she had applied for two other permanent positions with defendant and had not been chosen for them. Tr. Vol. I at 217:7-10.

attendance problems, and that as a result of these attendance problems, she was not selected for the Cyber Position. As Dawson makes clear, such damages are not recoverable.

As further explained in the Memorandum Opinion, Ewing, the decision maker who rejected plaintiff for the Cyber Position, demonstrated through his words and actions several reasons for her non-selection, which established that the FMLA interference was not the direct cause of plaintiff's non-selection. For example, Ewing testified that he considered plaintiff's attendance issues to have begun before the FMLA interference and he described her attendance issues as a disciplinary problem. See Memorandum Opinion [Dkt. No. 169] at 21-23. He also stated that he believed plaintiff considered herself entitled to a permanent position with defendant. Id. at 22. The Court also considered Ewing's actions as evidence of his unfavorable view of plaintiff, which included buttressing his decision not to select her by writing in an email that the director of ODNI had approved the decision not to hire plaintiff. In fact, the director had not approved the decision. In the same email he directed ODNI's leadership not to "suggest an outcome" to Hannah on her chance of permanent hire if she applied for other positions. Id. at 22-23. Lastly, the Court pointed to plaintiff's testimony that her supervisor suggested Hannah withdraw her application for a position which came open after the Cyber Position because Ewing would be the decision maker and it would be unlikely that she would get the job. Id. at 23. Based on all of this evidence, the Court found that plaintiff's non-selection for the Cyber Position was neither a direct result of, nor caused by, defendant's FMLA interference, but rather was a result of Ewing's negative perception of her.

Plaintiff's next argument is that the Court improperly shifted the burden of proof to plaintiff regarding why she was not hired for the Cyber Position. Plaintiff's argument conflates two different legal standards. Had plaintiff been pursuing a claim that her non-selection resulted

from discrimination under the Rehabilitation Act (Count I-A) or that it was retaliation for her using her FMLA rights (Count II-B), and had she made out a prima facie case, then the burden would have shifted to defendant to show a legitimate nondiscriminatory, nonretaliatory reason for her non-selection; however, Count I-A and Count II-B were dismissed years ago. The only count that went to trial, Count II-A of the Second Amended Complaint, was limited to alleging that defendant interfered with plaintiff's FMLA right to take leave to address her mental health issues. Having found that such interference occurred, the remaining issue was what losses were directly caused "by reason of" that FMLA interference. 29 U.S.C. § 2617. As defendant correctly argued throughout the litigation and in its response to the Motion for Reconsideration, the extent of appropriate damages is not a question of liability, for which an affirmative defense can be raised. None of the cases cited by plaintiff, therefore, is on point, because they all address liability. See, e.g., Cooper v. Fulton Cty., Ga., 458 F.3d 1282, 1287 (11th Cir. 2006) ("[A]n employer who interferes with an employee's FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised those rights.") ; Aponte v. Brown & Brown of Fla., Inc., 382 F. Supp. 3d 1318, 1325 (M.D. Fla. 2019), aff'd, 806 F. App'x 824 (11th Cir. 2020) ("An employer is not liable for an FMLA violation" when it shows it would have terminated the employee independent of the employee's FMLA leave request); Elzeneiny v. Dist. of Columbia, 195 F. Supp. 3d 207, 220-21 (D.D.C. 2016) (finding that a "plaintiff may .... establish liability" through the traditional Title VII McDonnell-Douglas burden-shifting framework). As previously explained to plaintiff, she had the burden to prove that her damages were caused "by reason of" defendant's FMLA interference, 29 U.S.C. § 2617, which requires proving that (1) she is entitled to an FMLA benefit; (2) her employer interfered with the provision of that benefit; and (3) that interference caused her harm. Adams v. Anne

Arundel Cnty. Pub. Sch., 789 F.3d 422, 427 (4th Cir. 2015). Causation of harm is part of plaintiff's burden of proof.

At core, plaintiff simply disagrees with the Court's finding that Ewing's mind was made up not to hire plaintiff for the Cyber Position independent of the FMLA interference. Plaintiff's disagreement with that finding does not provide a basis to grant a motion for reconsideration. "Motions to reconsider asking the Court to rethink what the Court had already thought through ... should not be granted." Intelligent Verification Sys., LLC v. Microsoft Corp., No. 2:12-cv-525, 2015 WL 12723143, at *2 (E.D. Va. Feb. 25, 2015) (internal citation omitted). As the Court has already weighed the evidence, and has applied the correct law, there is no basis for vacating its decision.

Plaintiff's last argument is that the Court should award her wages associated with the Cyber Position under the Court's equitable power. Under the FMLA, a court has the power to grant "equitable relief as may be appropriate." 29 U.S.C. § 2617. Plaintiff contends that she has lost "employment status," and that the applicable regulations allow her "any other relief tailored to the harm suffered." Under 29 C.F.R. § 825.300(e), such relief may include compensation in lieu of promotion or reinstatement. At least one court in this district has held that pay in lieu of reinstatement is an appropriate equitable remedy under the FMLA, Perry v. Isle of Wight Cnty., No. 2:15-cv-204, 2017 U.S. Dist. LEXIS 127311, at *18-20 (E.D. Va. Aug. 10, 2017), and the Fourth Circuit has emphasized the district court's power to grant such a remedy: "Front pay, as an alternative or complement to reinstatement, is an equitable remedy best determined by the district court." Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 307 (4th Cir. 1998). But even in equity, making such an award to plaintiff in this action is unwarranted, because the Court has found that her non-selection for the Cyber Position was not a result of defendant's FMLA

violation, but was rather an independent action of defendant. Therefore, she is not entitled to any compensation related to that position.

## CONCLUSION

For all these reasons, plaintiff's Motion for Reconsideration [Dkt. No. 174], which has been considered, will be denied by an Order to be issued with this Memorandum Opinion.

Entered this 18 day of March, 2022.

Alexandria, Virginia

/s/ *[signature]*
Leonie M. Brinkema
United States District Judge